The Ontario Bank, Respondent, v. Judson W. Loomis et al., Appellants.

*Ontario Bank* v. *Loomis*, 113 App. Div. 890, reversed.
(Argued October 14, 1907; decided November 1, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 19, 1906, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

*O. M. Reilly* for appellants.

*Louis L. Waters* for respondent.

HAIGHT, J. :

This action was brought to recover the amount of a promissory note for one thousand dollars, dated Phœnix, N. Y., March 11th, 1902, in which the defendants, four months after date, promised to pay to the order of Sam G. Parkin at the Phœnix Bank, Phœnix, N. Y., the sum mentioned. The note was indorsed by Parkin and delivered to the plaintiff. The defendants by their answer admitted the making of the note and the delivery of it to the payee therein named, and that it had been presented for payment, which was refused; but alleged that the note was without consideration; that the plaintiff was not a *bona fide* holder for value; that the note had been delivered to Parkin as an advance payment on shingles purchased of him which were to be delivered in the future, and for the purpose of aiding him in meeting the expenses of their manufacture, all of which the plaintiff had notice at the time the note was delivered to its manager; that the plaintiff was a party in interest, and held the note as collateral security; that it had caused sight drafts to be drawn upon the defendants amounting to more than one thousand dollars, which drafts had been honored and paid by the defendants to the plaintiff, with the understanding that such payment should apply upon the note. Upon the trial, at the

close of the evidence, the plaintiff's attorney moved for a direction of a verdict for the amount of the note and interest. The defendants' attorney asked to go to the jury upon all the evidence in the case. This was denied, the plaintiff's motion was granted and the verdict directed, to which an exception was taken by the defendants.

On the 5th day of March, 1902, Parkin entered into a contract in writing with the defendants, by which he agreed to sell and they to purchase a quantity of shingles, to be delivered in cars at the rate of two cars per month, commencing with April, until the whole amount contracted for should be delivered. On March 11th, at the request of Parkin, the defendants delivered to him the note in question as an advance payment upon the shingles and for the purpose of aiding him in meeting the expenses of their manufacture. Parkin thereupon indorsed the note and took it to the plaintiff bank for discount, at the same time informing the manager as to the nature of his contract with the defendants and the purpose for which the note had been delivered to him. Parkin, as he testified, had been doing business with the bank for a number of years, that he was at that time indebted to the bank and there had not been a time within five years when he had not been indebted to it. The manager of the bank testified that the note was delivered to him and he had it discounted on the 25th of March, 1902, and passed the proceeds to the credit of Parkin on the books of the bank. He further testified that he knew that the note was given for shingles the first time that he ever saw it. He also knew that Parkin had not delivered the shingles and knew that it was a long time after that before any delivery was made. He knew this before he discounted the note. He was so informed by Parkin. Parkin had told him when he presented the note for the first time that it was an advance payment on shingles. He further testified: " I knew about the time that he first commenced to ship shingles to the defendant. I can't tell you the date. Approximately, I should suppose it would be some time in June after the opening of navigation ; logs are cut and come down when the streams open. I also *wished* him (Parkin) to state to the defendants that the only condition that the

shingles should be shipped to the defendants on was that there should be a sight draft attached to the bill of lading which they should honor. * * * These shingles belonged to Mr. Parkin. We could dictate to him how he should sell the shingles in making advances to Mr. Parkin to take out shingles. We refused to make any advances on account of the sale of shingles unless there was bill of lading and a draft accompanying the shingles. The bank had a lien upon shingles which Parkin had. I wish to be understood this way: under our lien we are authorized to dictate to whom he may sell if we wish to exercise that, so that we had an interest in these shingles to the extent of our lien. Our lien covered these shingles that were shipped to the defendants. Those shingles referred to in the bill of lading. We had an interest in those and an interest to the extent of our lien, so that we had a right to dictate to Mr. Parkin whether he should ship those shingles or not. * * * I informed Parkin that the defendants could not have any shingles unless they paid the cash. I did not indorse any of the proceeds of these drafts which you have shown me on this note in question. I knew at the time I got the avails of the first draft that that was for shingles shipped to the defendants. I knew that the note Parkin brought to the bank was for shingles." It further appeared that from time to time shingles were shipped to the defendants with sight drafts attached to the bill of lading, which were honored by the defendants and paid to the plaintiff, amounting to more than the amount for which the note was given; that after the talk with Parkin, testified to by the manager of the plaintiff, Parkin wrote the defendants a letter which the defendants offered to read in evidence, but was excluded on objection of the plaintiff. In the letter Parkin stated that the bank was not satisfied to let him ship any shingles to them except on a cash basis; that the manager had no idea of asking them to pay the one-thousand-dollar note without giving them the shingles for the same; but he says the proceeds of shipment must be applied as made, and asked if it would be satisfactory to them to pay cash for the shingles as the cars arrive and have the one-thousand-dollar note returned. Another letter, under date of May 5th, 1902, was

also written by Parkin to the defendants, in which he stated, among other things, that the manager of the bank refused to allow him to ship shingles on time paper; that he would not expect you to pay the note without getting shingles for the same, but that he would not allow me to ship the one thousand dollars worth of shingles without the cash when the bank had advanced the money to take out the logs. He then closed by stating: " You see the position of the matter, and the only way I can handle it is to go ahead, fill your orders or contract and apply proceeds on the note. If you want any further satisfaction regarding the note, or if you doubt my statement, I would refer you to the manager of the Ontario Bank here, who will satisfy you on the question." And again, in postscript, he states : "As soon as I have made shipments sufficient to cover the note I will get it and send it to you." This letter, under like objection, was also excluded.

We think that the court erred in the excluding of these letters and in the directing of a verdict for the plaintiff. It is true that these letters contain irrelevant matter not purtenant to the issue or binding upon the plaintiff. But as to the substance of the letters, to which attention has been called, it appears to us that they were both relevant and competent. The shingles which the defendants had contracted to purchase of Parkin were his, but held by him subject to a lien for advances made by the plaintiff. The bank by virtue of its lien, as its manager claimed, could control the shipping and delivery of the shingles. It, with Parkin, had an interest in the property. When, therefore, Parkin informed the manager of the contract made with the defendants, and the manager instructed him to communicate to the defendants the conditions upon which he would permit the shingles to be shipped, the jury might have found that he constituted Parkin the agent of the bank to procure the consent of the defendants to pay the sight drafts in cash upon the arrival of the shingles, and in thus making the arrangement, disclosed in the two letters referred to, he was acting within the scope of his authority, and that the understanding and agreement was that the payments made by the defendants upon the sight drafts accompanying the bills of lading were

to be applied by the plaintiff upon the defendants' note in suit, and that, therefore, the plaintiff had no cause of action.

Something has been said to the effect that one of the shipments of shingles was not covered by the plaintiff's lien. It is not apparent to us, however, how this could change the situation, for, as we understand the evidence, the shipment was made with the plaintiff's knowledge upon the defendants' contract, with a draft for the amount attached to the bill of lading, the proceeds of which went to the plaintiff and was credited upon Parkin's account.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, WERNER and WILLARD BARTLETT, JJ., concur; HISCOCK, J., dissents.

Judgment reversed, etc.